IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Action No.: 3:21-CV-662

| | |
|---|---|
| ERIN OSMON | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) **COMPLAINT**<br>) |
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| Defendant. | )<br>) |

## INTRODUCTION

1) Plaintiff Erin Osmon ("OSMON") was a ticketed passenger attempting to travel through Asheville Regional Airport ("AVL") on June 27th, 2019.

2) Passengers traveling through AVL must submit to a security screening by the U.S. Transportation Security Administration ("TSA"), a sub-agency of Defendant United States of America.

3) The TSA maintains specific standards as to how its screeners are to conduct "pat-down" body searches of travelers in order to minimize the invasiveness of searches on passengers.

4) Defendant United States of America, by and through an employee of the TSA, intentionally, and for the purpose of sexual gratification and/or for the purpose of humiliating, dominating, or controlling OSMON in retaliation for questioning the search, repeatedly violated those standards and unlawfully touched OSMON's genitals, effectively sexually assaulting OSMON in the middle of an airport.

## PARTIES

5) Plaintiff OSMON is a natural person domiciled in Los Angeles, California.

6) Defendant United States of America is the sovereign nation and proper party for claims brought under the Federal Tort Claims Act, 28 U.S.C. Ch. 171.

## JURISDICTION & VENUE

7) All U.S. District Courts have personal jurisdiction over the United States of America.

8) Federal question subject matter jurisdiction is proper for the state law claim brought via the Federal Tort Claims Act. *See* 28 U.S.C. § 1346(b).

9) Venue is proper because the incident that gave rise to the complaint occurred within the Western District of North Carolina.

## ALLEGATIONS OF FACT

10) On June 27th, 2019, at or around 1:00 PM, OSMON arrived at Asheville Regional Airport.

11) OSMON possessed a valid boarding pass for a flight departing AVL to Los Angeles, CA, later that day.

12) OSMON approached the TSA screening line, as was required of her as a prerequisite to boarding her flight, and presented a valid photo identification and her boarding pass.

13) OSMON was directed into a body scanner for screening, and complied with that request.

14) OSMON was not in possession of any prohibited items.

15) Notwithstanding her compliance and the absence of prohibited items, OSMON was informed by a TSA employee, Transportation Security Officer ROBINSON, that the body scanner alarmed on her and that she would need to submit to a "groin search."

16) OSMON asked ROBINSON if the search would involve the touching of her genitals.

17) OSMON clearly and unambiguously advised ROBINSON that she would not consent to the touching of her genitals.

18) ROBINSON advised OSMON that the search would not require such touching.

19) In doing so, ROBINSON intentionally misled OSMON as to the nature of the search in order to fraudulently obtain her consent and cooperation.

20) TSA procedure for "groin searches" as a result of body scanner anomalies does involve contact with the genitals of travelers over the pants, skirt, or other garment.

21) Such searches consist of up to four parts: a "sliding" part, a "swiping" part, a waistband check, and an explosive trace detection check[1].

22) During the "sliding" part, the screener is required to slide his or her hand up the inside of the passenger's leg from the knee until the hand "meets resistance" – *i.e.*, the side of the screener's hand touches the penis/scrotum or the labia of the traveler.

23) During the "swiping" part, the screener is required to conduct a swiping motion along the front of the pants of a traveler at the groin area using *the back of* their hands.

24) The area over which the swiping happens includes the area where the genitals lie on either sex.

---

[1] The waistband and explosive trace checks are not at issue here and discussion is thus omitted.

25) Thus, ROBINSON had misrepresented to OSMON the nature of search that she was required to conduct and failed to obtain OSMON's consent – indeed, she was given explicit refusal to consent – to such a search.

26) But, ROBINSON did not simply search OSMON according to TSA procedure that would require brief contact with the side/back of the screener's hand with the intimate areas of the traveler; rather, she deviated from a normal search in at least four ways.

27) First, TSA provides floor mats with footprints on them to indicate where a traveler should put their feet during a pat-down search.

28) Despite having her feet on the foot prints, ROBINSON insisted that OSMON spread her legs in an abnormally wide manner – far wider than the foot prints dictated – several times.





29) The images labeled *Image 1* and *Image 2* above are true and correct images from the airport's security camera, are unedited except for cropping, and depict OSMON and ROBINSON during the incident described herein.

30) There was no security purpose fulfilled by forcing OSMON to spread her legs wider.

31) Upon belief, there was no TSA rule or "order" that required or allowed ROBINSON to demand OSMON to spread her legs as described *supra*.

32) Upon belief, the true purpose behind ROBINSON's repeated commands to OSMON to spread her legs wider was to humiliate, dominate, and control OSMON, and to provide greater access to fondle OSMON's vulva for ROBINSON's self-gratification.

33) Second, OSMON was wearing shorts at the time of the search.

34) ROBINSON, while sliding her hand up the inside of OSMON's legs, moved her hands *up inside of* OSMON's shorts to make direct contact with OSMON's vulva.

35) TSA procedure neither requires nor allows screeners to put their hands *up inside of* the outer clothing of a person being screened during the "sliding" part of the screening.

36) Upon belief, the true purpose behind ROBINSON placing her hands inside of OSMON's clothing was to humiliate, dominate, and control OSMON, and to fondle OSMON's vulva for ROBINSON's self-gratification.

37) Third, ROBINSON made two inappropriate comments to OSMON that are demonstrative of her intent.

38) ROBINSON commented on OSMON's attire during the beginning of the "sliding" part, noting that she found OSMON's shorts to be particularly short.

39) ROBINSON commented later during the "sliding" part, after OSMON involuntarily flinched as ROBINSON's hand made contact with her labia, that "if you resist, I will do this again."

40) TSA policy does not permit ROBINSON to conduct "punitive" searches, or to threaten the same.

41) Upon belief, the true purpose behind ROBINSON's commentary was to humiliate, dominate, and control OSMON, and to make OSMON feel like she was to blame, or "deserved," the sexual assault inflicted upon her by ROBINSON, and to feel that she was powerless to stop it.

42) Fourth, ROBINSON conducted the "swiping" part, but during this time she made contact with OSMON's vulva using the front of her hands and her fingertips.

43) As discussed *supra*, TSA policy forbids using front-of-hands during this search and instead requires screeners to use the back of their hands to minimize the intrusion upon the traveler.

44) Upon belief, the true purpose behind ROBINSON using the front of her hands and her fingertips, in violation of TSA policy, upon OSMON's intimate area was to humiliate, dominate, and control OSMON, and to fondle OSMON's vulva for ROBINSON's self-gratification.

45) OSMON was not found to be in possession of any prohibited items.

46) OSMON immediately filed complaints with both TSA management and airport police.

47) OSMON attempted to present her FTCA claim to TSA on September 9th, 2019.

48) This Court, in a previous case regarding the incident described in this complaint, ruled that the presentation was defective and dismissed that case without prejudice to renewing the FTCA claim once properly presented. <u>See</u> *Osmon v. U.S.*, 20-CV-31 (W.D.N.C., March 29th, 2021) (Reidinger, C.J.).

49) OSMON re-presented her FTCA claim to TSA on December 14th, 2020.

50) TSA did not respond to the claim within the 6-month presentment window, and thus her administrative claim requirements have been exhausted.

## **CLAIM FOR RELIEF**

### **Count 1 –Battery, *via the Federal Tort Claims Act***

51) ROBINSON, in the performance of her duties as an employee of the United States of America, made physical contact with OSMON's body.

52) The manner and circumstances under which the contact occurred were not authorized by law.

53) The contact made by ROBINSON was to OSMON's genital area.

54) A reasonable person would find such contact to be highly offensive.

55) OSMON did find such contact to be offensive.

56) The contact was made deliberately and intentionally.

57) OSMON did not consent to the *ultra vires* touching of her body.

58) The United States of America is therefore liable to OSMON for the battery committed by ROBINSON.

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

i. Actual damages for battery any garden-variety emotional damages stemming therefrom in an amount to be determined by a jury.

ii. Cost of the action.

iii. Reasonable attorney's fees.

iv. Any other such relief as the Court deems appropriate.

Respectfully submitted, this the 13th day of December, 2021.

BY: /s/ Matthew R. Gambale
MATTHEW R. GAMBALE
N.C. Bar No. 43359
OSBORN GAMBALE BECKLEY & BUDD PLLC
721 W. Morgan Street
Raleigh, North Carolina 27603
matt@counselcarolina.com
T: 919.373.6422
F: 919.578.3733
*Counsel for Plaintiff*