IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-00353-MR-WCM

| | | |
|---|---|---|
| ERIN OSMON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| THE UNITED STATES OF | ) | |
| AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on a Motion to Dismiss Plaintiff's
Complaint (the "Motion to Dismiss," Doc. 6), filed by Defendant the United
States of America, which Motion has been referred to the undersigned
pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I.    Relevant Background

A. Factual Allegations

The Complaint alleges generally as follows:

Plaintiff Erin Osmon ("Plaintiff") had a ticket to travel by plane from
Asheville, North Carolina to Los Angeles, California on June 27, 2019. Before
boarding her flight at the Asheville Regional Airport, Plaintiff presented
herself for security screening. Doc. 1 at ¶¶ 10-13.

While in the security line, Plaintiff was directed into a body scanner. Plaintiff was informed that the body scanner had "alarmed on her" and that she would need to submit to a "groin search." Id. at ¶ 15.

Plaintiff asked Transportation Security Administration ("TSA") Officer Robinson ("Robinson") if the search would require Robinson to touch Plaintiff's genitals and told Robinson that she would not consent to be touched in that manner. Plaintiff alleges that Robinson advised Plaintiff that the search procedure would not require touching of that nature. Id. at ¶¶ 16-19. Robinson then proceeded with a groin search.

Plaintiff alleges that Robinson intentionally misled Plaintiff as to the nature of the search and conducted an improper search during which Robinson directed Plaintiff to spread her legs wider than necessary, moved her hands up inside of Plaintiff's shorts and made direct contact with Plaintiff's private area, and made inappropriate comments to Plaintiff. Id. at ¶¶ 26-44.

Robinson did not find any prohibited items on Plaintiff. Id. at ¶ 45.

## B. Plaintiff's Claim

This case is the second one Plaintiff has filed in this district based on these events. In her first suit, Osmon v. United States of America and FNU Robinson, No. 1:20-cv-00031-MR-WCM, United States District Court, Western District of North Carolina ("Osmon I") which was filed on February 4, 2020, Plaintiff asserted a claim for battery against the United States pursuant to the

Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671–2680, and a claim against Robinson for an unreasonable search in violation of the Fourth Amendment pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

The undersigned recommended that a Motion to Dismiss by the defendants be granted, and that Plaintiff's FTCA claim be dismissed without prejudice and Plaintiff's <u>Bivens</u> claim be dismissed with prejudice. The District Court accepted the recommendations and Plaintiff's claim against the United States was dismissed without prejudice for failure to exhaust her administrative remedies. <u>See</u> <u>Osmon I</u>, Docs. 21, 28, 29.

In the instant case, Plaintiff brings a single battery claim against the United States pursuant to the FTCA. The United States has moved to dismiss, Plaintiff has responded, and the United States has replied. Docs. 6, 8, 10.

## II. Legal Standards

### A. Rule 12(b)(1)

A motion to dismiss based on Rule 12(b)(1) of the Federal Rules of Civil Procedure addresses whether the court has subject-matter jurisdiction to hear the dispute. <u>See</u> Fed. R. Civ. P. 12(b)(1). A dismissal for lack of subject matter jurisdiction should be without prejudice, since in such a context the court is unable to reach the merits of the case. <u>See</u> <u>e.g.</u>, <u>Beazer E., Inc. v. U.S. Navy</u>, 111 F.3d 129, 134 (4th Cir. 1997) (unpublished) ("If a court does not have

subject matter jurisdiction over a claim, it can only dismiss without prejudice;
it cannot reach the merits").

### B. Sovereign Immunity

"Absent a waiver, sovereign immunity shields the Federal Government
and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1994).
"Sovereign immunity is jurisdictional in nature," id, and "[t]he plaintiff bears
the burden of showing that the government has waived sovereign immunity at
the motion to dismiss stage." Robinson v. United States Dep't of Educ., 917
F.3d 799, 802 (4th Cir. 2019) (citations omitted); see also Evans v. B.F. Perkins
Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 647 (4th Cir. 1999) (citing
Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765,
768 (4th Cir.1991) ("The plaintiff has the burden of proving that subject matter
jurisdiction exists")).

Generally, a waiver of sovereign immunity "must be unequivocally
expressed in [the] statutory text," "will not be implied," and "will be strictly
construed, in terms of its scope, in favor of the sovereign." Lane v. Pena, 518
U.S. 187, 192 (1996).

In the context of the FTCA, and specifically when it was considering an
exception to the FTCA's waiver of sovereign immunity, the Supreme Court
noted that "the general rule that 'a waiver of the Government's sovereign
immunity will be strictly construed, in terms of its scope, in favor of the

sovereign'" was not implicated. <u>Dolan v. U.S. Postal Service</u>, 546 U.S. 481, 485 (2006) (quoting <u>Lane</u>, 518 U.S. at 192). The Court went on to state that the strict construction principle "is unhelpful in the FTCA context, where unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute, which waives the Government's immunity from suit in sweeping language." <u>Id</u>. (internal quotations and citations omitted).

Subsequent to <u>Dolan</u>, courts appear to have disagreed as to how waivers of sovereign immunity in the context of the FTCA should be construed. <u>Compare</u> <u>Pellegrino v. United States</u>, 937 F.3d 164, 171-172 (3d Cir. 2019) ("disputes over the breadth of the Tort Claims Act "do[ ] not implicate the general rule that 'a waiver of the Government's sovereign immunity will be strictly construed ... in favor of the sovereign'") (quoting <u>Dolan</u>, 546 U.S. at 491) <u>with</u> <u>id</u> at 199-200 (Krause, J. dissenting) (explaining that under <u>Dolan</u>, the general rule of strict construction does not apply to an exception to a waiver of sovereign immunity, but does apply to an exception to such an exception).

Subsequent to <u>Dolan</u>, the Fourth Circuit has continued to construe waivers of sovereign immunity in the context of FTCA claims strictly. <u>See</u> <u>Wood v. United States</u>, 845 F.3d 123, 127 (4th Cir. 2017) ("[b]ecause waivers of sovereign immunity must be strictly construed, the plaintiff bears the burden of demonstrating jurisdiction and showing that none of the FTCA's exceptions apply"); <u>see also</u> <u>Iverson v. United States</u>, 973 F.3d 843, 867 (8th

Cir. 2019) (Gruender, J. dissenting) ("the majority of our sister circuits still apply the strict-construction rule to waivers of sovereign immunity in the FTCA, *Dolan* notwithstanding") (citing <u>Wood</u>, 845 F.3d at 127; <u>Cooke v. United States</u>, 918 F.3d 77, 82 (2d Cir. 2019); <u>Hajdusek v. United States</u>, 895 F.3d 146, 151 (1st Cir. 2018); <u>Tsolmon v. United States</u>, 841 F.3d 378, 382 (5th Cir. 2016); <u>Burton v. United States</u>, 559 F. App'x 780, 781 (10th Cir. 2014); <u>Valadez-Lopez v. Chertoff</u>, 656 F.3d 851, 855 (9th Cir. 2011); <u>Ramos v. U.S. Dep't of Health & Human Servs.</u>, 429 F. App'x 947, 950 (11th Cir. 2011) (per curiam)).

## III.    The Issue Presented and Decisions from Other Courts

In <u>Osmon I</u>, because Plaintiff had not exhausted her administrative remedies, it was unnecessary for the court to address the question of whether Plaintiff's FTCA claim was barred by sovereign immunity. That question is now squarely presented by the Motion to Dismiss.

### A. The Role of TSA Screeners

The Aviation and Transportation Security Act created the TSA and charged the agency's Administrator with the "screening of all passengers and property" that will be carried aboard passenger aircraft. 49 U.S.C. § 44901(a); 49 U.S.C. § 114(e)(1). TSA screeners conduct searches for "items which are prohibited entry into the airport's sterile areas." <u>Welch v. Huntleigh USA Corp.</u>, No. 04-663 KI, 2005 WL 1864296, at *5 (D.Or. Aug. 4, 2005); <u>see also</u> 49 U.S.C. § 44902(c) ("An agreement to carry passengers or property in air

6

transportation or intrastate air transportation by an air carrier, intrastate air carrier, or foreign air carrier is deemed to include an agreement that the passenger or property will not be carried if consent to search the passenger or property for a purpose referred to in this section is not given").

Additionally, the TSA Administrator may designate a federal employee to serve "as a law enforcement officer." 49 U.S.C. § 114(p)(1); see also 49 U.S.C. § 114(p)(2) (indicating that a designated law enforcement officer may, while engaged in official duties, carry a firearm, make certain arrests, and seek and execute warrants for arrest and seize evidence).

The United States asserts that TSA screeners like Robinson, who are not authorized to carry weapons, make arrests, seize evidence, execute criminal investigative searches, investigate potential civil violations, or take civil enforcement actions, have a separate and distinct role from TSA designated law enforcement officers.[1]

---

[1] The United States describes the distinctions between screeners and designated law enforcement officers in the Declaration of Kevin Frederick, the Federal Security Director for the Asheville Regional Airport. Doc. 7-1. Mr. Frederick's Declaration may be considered in the context of the instant Motion. See In re KBR, Inc., 744 F.3d 326, 333 (4th Cir. 2014) ("[W]hen a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment"); Chisholm v. United States, No. 3:08-4149-JFA, 2009 WL 10710968 (D.S.C. Nov. 10, 2009) (considering uncontroverted deposition testimony and operating procedures to determine that Loss Prevention Associate at Shaw Air Force Base was not an "investigative or law enforcement officer").

7

Plaintiff does not contest the United States' characterization that Robinson was a TSA screener and was not designated as a TSA law enforcement officer.

## B. The Law Enforcement Proviso

The FTCA waives the United States' sovereign immunity for certain tort claims. See Meyer, 510 U.S. 471 at 475; 28 U.S.C. § 1346(b). Specifically, the statute allows claims against the United States for monetary damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1).

28 U.S.C. § 2680 creates certain exceptions to this waiver. The exception at issue in this matter provides that "the United States does not waive sovereign immunity as to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h).

There is, though, an exception to this exception. That provision, which is known as the "law enforcement proviso" (the "Proviso") states:

> That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out

8

of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. § 2680(h).

In other words, claims for the torts listed in the Proviso against an "investigative or law enforcement officer" are not barred by sovereign immunity. Consequently, the issue presented by the Motion to Dismiss is whether Robinson was an "investigative or law enforcement officer" as that term is defined in the Proviso. If so, sovereign immunity has been waived with respect to Plaintiff's battery claim against the United States and the claim may proceed. If not, sovereign immunity remains in place and Plaintiff's claim must be dismissed.

## C. Development of the Law Relative to the Proviso

Courts have reached differing conclusions when determining whether TSA screeners fall within the scope of the Proviso.

### 1. Cases Before <u>Pellegrino</u> and <u>Iverson</u>

Some courts have held that TSA screeners are not "investigative or law enforcement officers" – that is, officers of the United States who are "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law" – because TSA screeners do not engage in

9

"traditional law enforcement functions." <u>See</u> <u>Hernandez v. United States</u>, 34 F.Supp.3d 1168, 1179 (D. Col. Feb. 28, 2014) (reasoning that the Proviso references three functions "commonly understood to be traditional law enforcement functions" and that officers falling within the scope of the Proviso "have broad search, seizure, and/or arrest powers that they may exercise in a variety of circumstances. In contrast, the TSA screener's power is limited to pre-boarding inspections for certain prohibited items"); <u>Welch v. Huntleigh USA Corp.</u>, No. 04-663 KI, 2005 WL 1864296, at *5 (D. Or. Aug. 4, 2005) (finding that, because TSA screeners "were only able to perform consensual searches, and had no authority to arrest, they cannot be considered law enforcement officers for the purpose of the FTCA"); <u>see also</u> <u>Gesty v. United States</u>, 400 F.Supp.3d 859, 864-865 (D. Az. 2019) ("While general TSA screeners cannot be considered law enforcement officers, a TSA Administrator may designate a Law Enforcement Officer (LEO), who has the power to carry firearms, seize evidence, or make arrests. under Section 2680(h).") (citing 49 U.S.C. § 114(p)).[2]

The only district court in the Fourth Circuit to consider the scope of the Proviso in relation to TSA screeners applied similar reasoning. <u>See</u> <u>Weinraub v. U.S.</u>, 927 F.Supp.2d 258, 263 (E.D.N.C. Aug. 13, 2012) ("traditional

---

[2] <u>Gesty</u> was decided after the panel decision in <u>Pellegrino</u>, but before the *en banc* decision discussed below.

investigative or law enforcement officers have broad search, seizure, and/or arrest powers that they may exercise in a variety of circumstances, which stands in stark contrast to the TSA screener's power that is limited to pre-boarding searches for certain prohibited items").

In June of 2014, a panel of the Eleventh Circuit, in an unpublished, per curiam opinion, held that TSA screeners were not within the scope of the Proviso "for a simpler reason – they are not 'officers of the United States Government.'" Corbett v. Transportation Sec. Admin., 568 Fed. Appx. 690, 701 (11th Cir. 2014) (unpubl.) (per curium).[3] In that regard, the court explained that the Proviso used the term "officer of the United States" while other sections of the FTCA used "employee," and that "the federal statutes governing airport security screening differentiate between federal employees of TSA and law enforcement officers" such that the "TSA Administrator…must affirmatively act" to make a TSA employee a "law enforcement officer." Id.

### 2. Pellegrino and Iverson

In July of 2018, a panel of the Third Circuit, in a 2-1 decision, held that the Proviso applied only to criminal law enforcement officers, and that TSA screeners were not such officers. Pellegrino v. United States Transportation Sec. Admin., Div. of Dep't of Homeland Sec., 896 F.3d 207 (3d Cir. 2018). The

---

[3] The Corbett court did not reach the question of whether TSA screeners "execute searches."

Third Circuit later considered the case *en banc* and, in a 9-4 ruling, reversed the panel's decision. Pellegrino v. United States of Am. Transportation Sec. Admin., Div. of Dep't of Homeland Sec., 937 F.3d 164 (3d Cir. 2019).

On August 31, 2020, a panel of the Eighth Circuit similarly held, in a 2-1 decision, that TSA screeners were "law enforcement officers" for purposes of the Proviso. Iverson v. United States, 973 F.3d 843 (8th Cir. 2020).

Both Circuits rejected the argument that TSA screeners were not "officers of the United States," and declined to read the phrase "execute searches" as describing searches performed only for traditional law enforcement/criminal law purposes. Pellegrino, 937 F.3d at 170 ("the role is Transportation Security *Officer*, and TSOs wear uniforms with badges that prominently display the title 'Officer.' Hence, they are 'officer[s]' under the proviso"); id. at 174 ("mere use of 'execute' does not create a distinction between criminal searches and administrative searches"); Iverson, 973 F.3d at 848-850; 849 (noting, among other reasons, that TSA screeners are "officers" because "the use of the term *any* before *officers* does not favor a narrow definition…"); id. at 852 (rejecting argument that the Proviso's use of "execute searches" refers to traditional law enforcement searches and not administrative searches such as those conducted by TSA screeners) (emphasis in original).

### 3. Subsequent Cases

Some later decisions have followed the reasoning of Pellegrino and

*Iverson* and have held that TSA screeners fall within the scope of the Proviso. See *Frey v. Pekoske*, No. 18-cv-7088 (CS), 2021 WL 1565380, at *9 (S.D.N.Y. April 21, 2021) (following *Pellegrino* and *Iverson* and holding that "because TSOs are 'officer[s] of the United States' who are 'empowered by law to execute searches,' I find that they fall within the law enforcement proviso" and denying motion to dismiss FTCA claims on sovereign immunity grounds); *Lundquist v. United States*, No. CV 20-4980 FMO (ASx), 2021 WL 3744573, at *4 (C.D. Cal. July 27, 2021) (finding the "detailed reasoning" of *Pellegrino* persuasive); *Webb-Beigel v. United States*, No. CV-18-00352-TUC-JGZ, 2019 WL 4750199, at *5 (D. Az. Sept. 30, 2019) (following *Pellegrino* and noting that the "[t]he Third Circuit had the benefit of deciding *Pellegrino* after extensive briefing on the issue from both sides.").

In contrast, in *Leuthauser v. United States*, a case decided after *Pellegrino* but before *Iverson*, a court in the District of Nevada found that when the Proviso is read in its entirety, "'execute searches,' 'seize evidence,' and 'make arrests' connote traditional law enforcement officer responsibilities, as opposed to the administrative screenings performed by TSA screeners." No. 2:20-CV-479 JCM (VCF), 2020 WL 4677296, at *3 (D. Nev. Aug. 12, 2020).[4]

---

[4] The *Leuthauser* court denied a motion to dismiss because the complaint did not indicate whether the "TSA agent" at issue was a law enforcement officer or a security screener. 2020 WL 4677296, at *4 (citing *Leytman v. United States Dept. of Homeland Security Transportation Security Admin.*, 804 Fed. Appx. 78, 81 (2d Cir.

## IV.  Discussion

Here, the United States argues that Robinson, a TSA screener, is not covered by the plain language of the Proviso because "there are multiple indicators in the statutory text that show it is intended to apply only to traditional law enforcement officers empowered to investigate and respond to suspected criminal conduct." Doc. 7 at 8. Specifically, the United States contends that Congress used the more limited phrase "investigative or law enforcement officer" rather than "employee," that "the authority to 'execute searches' naturally connotes the traditional police power to execute a warrant or other type of criminal search," that the other listed powers in the Proviso ("seize evidence" and "make arrests") similarly connote traditional police powers, that all three powers are qualified by the phrase "for violations of Federal law," and that the specific intentional torts listed in the Proviso are those "typically committed by individuals with traditional police powers." Doc. 7 at 8-13. Additionally, the United States asserts that the legislative history of the Proviso confirms that it "applies only to intentional torts committed by traditional investigative or law enforcement officers, *not* by TSA security

---

2020) (summary order) (explaining that "whether the TSA agent in question was a screener or a law enforcement officer may have an impact on the law enforcement proviso analysis," and remanding to allow "further proceedings…focused on the roles of the TSA employees alleged to have been involved")).

screeners conducting administrative searches." Doc. 7 at 7 (emphasis in the United States' brief).

In response, Plaintiff argues that the FTCA's waiver of sovereign immunity should be construed broadly and urges the court to follow the majority opinions in Pellegrino and Iverson. See Doc. 8 at 14. Plaintiff contends that TSA screeners are "officers" according to the common understanding of that term, and that "a TSA screener's job is *almost exclusively* that of executing searches of both passengers and their property, as required by law." Doc. 8 at 12 (emphasis in Plaintiff's brief).[5] Additionally, Plaintiff contends that while the phrase "for violations of Federal law" is intended to modify only the power to "make arrests," TSA screeners do execute searches for violations of Federal law. See Doc. 8 at 16.

As demonstrated by the authorities referenced above, courts have written thoughtful and well-reasoned opinions that reach differing conclusions about this issue. See Frey, 2021 WL 1565380, at *4 ("The split within and among courts demonstrates that the issue presents a close call, and I expect it ultimately will need to be resolved by the Supreme Court or Congress"). Bearing in mind that "[s]tatutory terms should not be construed 'in a vacuum,

---

[5] Although Plaintiff asserts in a footnote that screeners also have authority to seize evidence and "detain passengers," Plaintiff does not develop those arguments further, and instead focuses on whether a TSA screener is empowered to "execute searches." See Doc. 8 at 12 n. 5.

but with reference to the statutory context, structure, history, and purpose,'" Frey, 2021 WL 1565380, at *5 (quoting Abramski v. United States, 573 U.S. 169, 179 (2014)), the undersigned is primarily persuaded by the reasoning of the dissenting opinions in Pellegrino and Iverson.

## A. "any officer of the United States"

"To qualify as an *investigative or law enforcement officer* under the proviso, a TSO must be 'any *officer* of the United States." Iverson, 973 F.3d 848 (citing 28 U.S.C. § 2680(h)) (emphasis in Iverson). The term "officer" is not statutorily defined, see 28 U.S.C. § 2671, and therefore the "ordinary dictionary definition" of the term may be used. Yates v. United States, 574 U.S. 528, 537 (2015) ("Ordinarily, a word's usage accords with its dictionary definition"); Smith v. United States, 508 U.S. 223, 228 (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning"). As explained by the Pellegrino majority:

> Under one prominent dictionary definition shortly before 1974, the year of the proviso's enactment, an officer "serve[s] in a position of trust" or "authority," especially as "provided for by law." *Officer*, Webster's Third New International Dictionary (1971); *see also Officer*, Black's Law Dictionary (4th ed. rev. 1968) ("[A]n officer is one holding a position of trust and authority ...."). TSOs satisfy this definition, as they are "tasked with assisting in a critical aspect of national security — securing our nation's airports and air traffic." Vanderklok v. United States, 868 F.3d 189, 207 (3d Cir. 2017). To take another definition from the time, officers are "charged" by the Government "with

16

the power and duty of exercising certain functions ... to be exercised for the public benefit." *Officer*, Black's Law Dictionary, *supra*. TSOs qualify under this definition as well, as they perform "the screening of all passengers and property," 49 U.S.C. § 44901(a), to protect travelers from hijackings, acts of terror, and other threats to public safety. For good reason, the role is Transportation Security Officer, and TSOs wear uniforms with badges that prominently display the title "Officer." Hence they are "officer[s]" under the proviso.

937 F.3d at 170.

The undersigned agrees that TSA screeners such as Robinson are "officers of the United States" for purposes of the Proviso.

However, even if TSA screeners are "officers of the United States," to be covered by the Proviso, they must also qualify as "investigative or law enforcement officers." Specifically, they must also be "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."

### B. "who is empowered by law to execute searches, to seize evidence, or to make arrests"

The parties appear to agree that Robinson was conducting an "administrative" search of Plaintiff rather than a "criminal" search. See Doc. 7-1 at 6; Doc. 8 (Plaintiff's opposition) at 7 ("The government's motion asks the Court to address a pure question of law: whether the FTCA waives sovereign immunity for intentional torts of TSA screeners"); id. at 14 ("The existence of

law enforcement employees of TSA who are empowered to conduct criminal searches does not mean that the administrative searches conducted by TSOs are not also 'empowered by law,' or that they are not also searches…the law enforcement proviso covers both sets of employees"); <u>see also</u> <u>United States v. Hartwell</u>, 436 F.3d 174 (3d Cir. 2006) (Alito, J.) (search of a defendant at an airport was justified by the administrative search doctrine); <u>Weinraub v. U.S.</u>, 927 F.Supp.2d 258, 262 (E.D.N.C. Aug. 13, 2012) ("TSA screeners perform limited, consensual searches that are administrative in nature"). The parties disagree, though, as to whether a TSA screener conducting such a search falls within the scope of the Proviso.

The Proviso's grouping of "execute searches" with "seize evidence, or to make arrests for violations of federal law" indicates that the Proviso is intended to pertain to actors involved in traditional law enforcement activities. <u>Iverson</u>, 974 F.3d at 862 (Gruender, J. dissenting) ("§ 2680(h) pairs 'execute searches' with other traditional law enforcement functions, 'seiz[ing] evidence' and 'mak[ing] arrests'"); <u>Weinraub</u>, 927 F.Supp.2d at 263 ("it would be unreasonable to interpret 'to execute searches' to include the TSA screener's performance of narrowly focused, consensual searches that are administrative in nature, when considered in light of the other traditional law enforcement functions (i.e., seizure of evidence and arrest) that Congress chose to define 'investigative or law enforcement officers'"); <u>accord</u> <u>Dolan</u>, 546 U.S. at 486-487

("'[A] word is known by the company it keeps'—a rule that "is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress.'") (quoting Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307 (1961) and citing Dole v. Steelworkers, 494 U.S. 26, 36 (1990) ("[W]ords grouped in a list should be given related meaning" (internal quotation marks omitted)).[6]

Further, the phrase "execute searches" is a "term of art" connoting investigative rather than administrative searches. See Iverson, 974 F.3d at 861 (Gruender, J. dissenting) ("When Congress passed the law enforcement proviso in 1974, 'execute searches' primarily referred to criminal law enforcement searches (otherwise known as investigative searches) executed by traditional law enforcement officers") (citations omitted); Pellegrino, 937 F.3d at 185 (Krause, J. dissenting) (explaining that "[t]he proviso does not use the word 'search' alone; it refers to the power to 'execute searches'—a term of art. Without exception, every other statute in the United States Code that uses this phrase refers to investigatory searches" and that "Congress typically uses markedly different phrasing when granting employees the power to perform administrative searches") (citing 49 U.S.C. § 44901(a) (TSA screeners conduct

---

[6] The undersigned acknowledges that the Dolan court was interpreting an exception to the FTCA's waiver of sovereign immunity rather than an "exception to an exception" like the Proviso.

"screening[s]"); 29 U.S.C. § 657(a)(2) (OSHA inspectors may "inspect and investigate"); 21 U.S.C. § 374(a)(1) (FDA inspectors may "enter" and "inspect"); 42 U.S.C. § 6927(a) (authorizing EPA inspectors "to enter" and "to inspect")).

### C. "for violations of Federal law"

Additionally, the undersigned reads the phrases "execute searches," "make arrests," and "seize evidence" as each being modified by the final phrase "for violations of Federal law." See Jama v. ICE, 543 U.S. 335, 344 n.4 and 344 (2005) (suggesting that application of the last antecedent rule would not be appropriate when interpreting a "single, integrated list – for example, 'receives, possesses, or transports in commerce or affecting commerce'"); Lockhart v. United States, 577 U.S. 347, 355 (2016) (noting Jama); Pellegrino, 937 F.3d at 186 (Krause, J. dissenting) ("And 'violations of Federal law' must refer to criminal law given that the phrase also modifies 'make arrests,' which can only be made for violations of Federal criminal law. Otherwise, the phrase 'for violations of Federal law' would carry one meaning when modifying 'make arrests' yet another when modifying 'execute searches.' That cannot be.") (citing Clark v. Martinez, 543 U.S. 371, 378 (2005) ("To give the[ ] same words a different meaning for each category would be to invent a statute rather than interpret one")).

### D. Types of Torts Covered

Further, the Proviso waives immunity only for a subset of intentional

torts. Specifically, while the exception in 28 U.S.C. § 2680(h) reclaims the United States' sovereign immunity for the intentional torts of "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," the Proviso waives the United States' sovereign immunity for claims of "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." That is, Congress "excepted only torts typically associated with traditional police powers for the proviso." Pellegrino, 937 F.3d at 188 (Krause, J. dissenting).

### E. Intended Purpose of the Proviso

Finally, interpreting the Proviso to encompass only traditional law enforcement activities appears to be in keeping with its intended purpose. In particular, "[a] review of the legislative history reveals that Congress, in response to 'no-knock' raids conducted by federal narcotic agents on the wrong dwellings, passed the 1974 amendment to the Federal Tort Claims Act to provide compensation for such victims." Solomon v. U.S., 559 F.2d 309, 310 (5th Cir. 1977) (per curiam) (citing S.Rep.No. 588, 93rd Cong., 2d Sess., reprinted in (1974) U.S.Code Cong. & Admin.News, pp. 2789, 2790-91)); see also Norton v. U.S., 581 F.2d 390, 392-393 (4th Cir. 1978) ("The amendment to s 2680(h) is clearly intended to waive the federal government's sovereign-immunity defense in suits brought to redress violations of the fourth amendment

committed by federal law enforcement officers"); <u>Daniels v. U.S.</u>, 470 F.Supp. 64, 67-68 (E.D.N.C. 1979) ("the legislative background shows Congress intended to provide an effective remedy for innocent victims of federal law enforcement abuses through established FTCA procedures and analogous case law. Although not exhaustive, the tort listing in Section 2680(h) is illustrative of the type of common law intentional torts federal officers may commit in pursuit of their law enforcement duties") (citations omitted); <u>see also</u> <u>Pellegrino</u>, 937 F.3d at 195 (Krause, J. dissenting) ("After debating competing options, Congress decided to afford a remedy only to 'victims of Federal law enforcement abuses.'") (quoting <u>Caban v. United States</u>, 671 F.2d 1230, 1235 (2d Cir. 1982)).

## V. Recommendation

For the reasons set out above, the undersigned is persuaded that TSA screeners should not be considered to be "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law" and therefore fall outside the scope of the Proviso such that the United States has not waived sovereign immunity for Plaintiff's claim.

Consequently, the undersigned **RESPECTFULLY RECOMMENDS** that Defendant United States of America's Motion to Dismiss Plaintiff's Complaint (Doc. 6) be **GRANTED**.

Signed: August 1, 2022

W. Carleton Metcalf
United States Magistrate Judge

**Time for Objections**

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).

24